M. N. CALLAWAY, Respondent, v. W. H. WOODWARD *et al.*, Appellants.

Kansas City Court of Appeals, December 24, 1887.

ACTION—SUIT AGAINST PARTNERSHIP FOR CLAIM AGAINST AN INDIVIDUAL MEMBER—CASE ADJUDGED.—Where the evidence shows (as in this case) a transaction with an individual member of a partnership, and made long before the partnership was entered into by him, and the suit is against the partnership, and the evidence does not develop a justification for the action, as against the partnership, the action cannot be maintained.

APPEAL from Audrain Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

G. B. McFARLANE, for the appellants.

I.    The evidence fails to show any such connection of the firm of W. H. Woodward & Son with the tran-

saction as would make it a partnership matter so as to bind defendant, Henry Woodward, and the judgment against him was improper. 1 Lindley on Partnership (Ewell's Ed.) 309 ; *Cayton v. Hardy,* 27 Mo. 536. There is no evidence showing any connection between this transaction and the firm business of Woodward & Son, nor is there any evidence whatever connecting Henry Woodward personally with it. The firm name was never used. The money was not paid to the firm. No compensation was charged by the firm. Henry Woodward had no personal interest in the title to the land. The land was bought by W. H. Woodward before the partnership was formed. Both tracts were "in the same fix." Plaintiff and W. H. Woodward had each warranted the title to his respective tract. Breach of warranty was threatened. They met and agreed (taking plaintiff's version) to buy up the outstanding title, each to pay one-half the cost. The negotiation with Sanders was by W. H. Woodward alone. Title was made to him alone. Defendants both testify that it was a private matter of W. H. Woodward and not a firm affair. Nothing was said or done by either to deceive plaintiff as to whose business it was. There was no evidence to justify the instructions authorizing a verdict against Henry Woodward.

II. Under the evidence, plaintiff could not recover on the ground of malfeasance of agent to principal. W. H. Woodward was not an agent, strictly speaking, but was simply engaged with plaintiff in a joint enterprise (again adopting plaintiff's evidence), and sustained to him the relation of partner rather than that of agent.

III. It appears that, as a matter of fact, defendant, W. H. Woodward, had bought the land and had obtained a deed thereto from Sanders, before the time of the agreement plaintiff claims to have made with him. If that is so, then plaintiff's action should have been for misrepresentations and deceit and the measure of damage would have been different. 3 Sutherland on Damages,

589; *Brownlee v. Hewitt*, 1 Mo. App. 360; *Langdon v. Green*, 49 Mo. 363.

IV. Much of the evidence in this case, while admissible to explain the relation of the parties and the inducement to the agreement, at the same time was calculated to confuse and mislead the jury, though properly warned by instructions. The case should have been tried before a chancellor, or upon special issues. The result might not have been the same.

M. Y. DUNCAN, for the respondent.

I. This was an action at law and the verdict of the jury is conclusive. The court of appeals has no power to review the finding of facts in actions at law. *Beck v. Pollard*, 55 Mo. 26; *Oakes v. Ins. Co.*, 52 Mo. 237; *Capelle v. Brainard*, 52 Mo. 479.

II. The court committed no error in the instructions given on behalf of respondent, nor in refusing the one asked by defendants. There was no evidence to support that instruction. The testimony of both the Woodwards was squarely against it, while the respondent's evidence was pointed and clear against any such a theory as that contained in the instruction.

III. This suit was properly brought against both the Woodwards. This transaction was within the scope of the partnership. *Flanagan v. Alexander*, 50 Mo. 50. Henry Woodward testifies as follows: "I went to Memphis for the purpose of purchasing the claim of Sanders to forty acres. I appointed an agent to buy the land and came home. The agent wrote us that he had bought eighty acres for one hundred dollars. We then wrote the agent at Memphis to have deed made to my father and send him." Here it is plain that Henry was a full partner in the matter. How could the agent at Memphis buy eighty acres when he was only directed to buy forty? How could he know anything about the matter except as he had been informed and instructed by Henry? There is no pretense that the agent obtained

the information through any one else. Then it follows, as a matter of course, the "us" and "we" in Henry's testimony were really W. H. and Henry, and that they were jointly engaged in defrauding defendant out of his money. To do so Henry went to Memphis and W. H., his father, went on Sunday to respondent's house. So eager was he to rope the respondent in that he could not rest over Sunday. Henry was pulling one end of the rope in Memphis and his father, W. H., dallying with the other end on Sunday at old man Callaway's.

ELLISON, J.—This is an action against defendants as partners. The petition charges that they were partners in the real-estate agency business; that, as such partners, they fraudulently obtained from plaintiff the money sued for, in the following manner: That plaintiff and defendant, W. H. Woodward, each purchased at sheriff's tax sale a forty acres of land; the tract purchased by the plaintiff adjoined other land owned by him, and the tract purchased by W. H. Woodward adjoined other land owned by him; afterwards, in 1884, plaintiff sold the forty which he had thus purchased, together with his other lands; that, afterwards, in 1886, defendants stated to plaintiff that each of their tax forties which they had bought was claimed by one Sanders, and that, in order to avoid a law suit, all parties should join in and buy Sanders' claim, to perfect the title; that plaintiff agreed to this and was to bear one-half of the expense of procuring said title and defendants the other half; that, afterwards, defendants represented that they had procured a deed from Sanders for both tracts, for which they had been compelled to pay four hundred dollars, besides travelling expenses, amounting to thirty-two dollars, one-half of which was two hundred and sixteen dollars; that, relying on such representations, he paid to defendants the latter sum; that all of such statements as to the amount paid Sanders were false, and were made by defendants with the design, intent, and purpose to cheat and defraud plaintiff; that,

in truth and fact, defendants had only paid one hundred dollars for the deed to said lands and ten dollars for expenses, making plaintiff's part of the transaction amount to fifty-five dollars; that, by reason of the false representations, as stated, plaintiff had paid defendants the said sum of two hundred and sixteen dollars, being one hundred and sixty-one dollars more than was due them. The answer was a general denial. There was a verdict against defendants and they appeal.

The evidence in the case, as we gather it from the abstract presented, shows that defendants were not partners till 1884, four years after W. H. Woodward and plaintiff purchased their respective tracts at sheriff sale; that both W. H. Woodward and plaintiff sold their lands, including these tracts, making warranty deeds therefor, plaintiff selling his in 1884; that nothing more occurred concerning the land till 1886, nearly two years after plaintiff's sale; that then defendant, W. H. Woodward, went to plaintiff's home and told him that "we (plaintiff and W. H. Woodward) are about to get into trouble about our tax lands"; that Woodward said, "he was trying to get a settlement for his own forty acres, and wanted me to join him and pay one-half of the expenses, and get a clear title to both our tracts." The evidence then further showed that, on W. H. Woodward afterwards stating that he had the deed from Sanders, plaintiff settled with him, paying him a check for forty dollars and executing his note for one hundred and seventy-five dollars, both check and note payable to W. H. Woodward. This statement of the evidence is from the testimony given by plaintiff.

I am unable to find any support whatever for the judgment against Henry Woodward. The evidence clearly shows an individual transaction of W. H. Woodward. Defendant, Henry, never had any interest in the land. It was purchased four years before he entered into partnership with W. H.; W. H. Woodward had sold the tax forty; had made an individual warranty deed, and was interested in protecting his warranty;

plaintiff had done the same and had the same interests to protect; and thus the two had their understanding or agreement. The mere fact that W. H. Woodward got Henry to make a trip to see Sanders does not alter the case; he may as well have gotten him as another. Neither do I see the relevancy of the allegation in the petition, and the proof in the evidence, that these defendants made the sale of plaintiff's land for him in 1884. It is a mere outside fact, having no connection with this case. After the sale of the land plaintiff says he "heard nothing more of the matter till one Sunday afternoon, in April, 1886," the time when the defendant, W. H. Woodward, called on him to see about perfecting the title. It is possible counsel aims to connect this with a statement in the latter portion of the plaintiff's testimony, where he states it was agreed between him and W. H. Woodward that since he, Woodward, had sold the land for him as his agent and caused him to make a warranty deed, that he, Woodward, was to see after the matter as best he could, receiving from plaintiff no compensation, but only "one-half the actual expense of clearing up the title to the eighty acres." Nothing is said of this in plaintiff's brief and it is clear that the statement does not make this individual affair of W. H. Woodward's a partnership transaction.

The evidence does not develop a justification for this action as against the partnership, and we will, therefore, reverse the judgment and remand the cause. All concur.